UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| SABRINA BETH HALL, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.: 3:10-CV-406 |
| | ) | (VARLAN/SHIRLEY) |
| WYNDHAM VACATION OWNERSHIP, | ) | |
| INC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs Sabrina Beth Hall ("Hall"), Krystal Collins ("Collins"), and Darlene Ott ("Ott") filed this civil action in state court against defendants Wyndham Vacation Ownership, Inc. and Wyndham Vacation Resorts, Inc. (collectively, "defendants"), each plaintiff claiming a violation of the Tennessee Human Rights Act (the "THRA"), T.C.A. §§ 4-21-102, *et seq.*, and a state tort claim for intentional infliction of emotional distress [*see* Doc. 1-1]. Defendants removed this case to federal court and filed the instant Rule 12(b)(6) Motion to Dismiss Plaintiffs' Claims for Intentional Infliction of Emotional Distress [Doc. 4]. Plaintiffs have responded in opposition [Doc. 6]. Defendants have not filed a reply and the time for doing so has passed. *See* E.D. TN. LR 7.1(a), 7.2.

The Court has carefully considered the parties' briefs and supporting documents [Docs. 4, 4-1, 6, 6-1], all in light of the controlling law. For the reasons set forth herein, defendants' Rule 12(b)(6) motion to dismiss plaintiffs' intentional infliction of emotional distress claims [Doc. 6] will be **GRANTED**.

## I. Relevant Facts[1]

### A. Hall

Plaintiffs, at various times, were employed by defendants as sales professionals and managers of sales professionals in defendants' Smokey Mountain Office [Doc. 1-1, ¶ 10]. Hall was employed as a timeshare sales professional in the Smokey Mountain Office from October 7, 2005 to July 8, 2009 [*Id.*, ¶¶ 11, 15]. Sometime before November 2008, defendants trained Hall in a sales technique called the "Big Show." [*Id.*, ¶ 12]. The "Big Show" included a marketing technique called "Extra Holidays" [*Id.*]. In November 2008, Hall went on leave from work to care for her daughter [*Id.*, ¶ 13]. Hall returned to work in March 2009, at which time she alleges she received more training on how to use the "Big Show" and "Extra Holidays" techniques [*Id.*].

In April 2009, Hall was "secretly shopped" during a sales presentation during which she used the "Big Show" and "Extra Holidays" techniques [Doc. 1-1, ¶ 14].[2] Hall alleges that at the time of her secret shop, defendants were training her and other sales professionals to use the "Extra Holidays" technique [*Id.*, ¶ 19]. After Hall was secretly shopped, Terry Godfrey ("Godfrey"), director of sales at the Smokey Mountain Office, announced that as

---

[1] Because defendants have moved to dismiss for failure to state a claim, all facts and inferences to be drawn therefrom must be construed in plaintiffs' favor. So construed, the relevant facts are taken, for the most part, from the allegations in plaintiffs' complaint [*see* Doc. 1-1].

[2] A "secret shop" is an employee-evaluation tool in which sales professionals are secretly recorded making their sales presentations to individuals posing as customers [*see* Doc. 1-1, ¶ 14; *see* Doc. 4-1, p. 2 n.3]. The employer evaluates the recorded presentations to assess performance and compliance with sale guidelines and expectations [*Id.*].

of May 2009, sales staff would no longer be allowed to use the "Extra Holidays" technique [*Id.*, ¶ 16]. Hall alleges that Godfrey informed the sales staff that, but for his intervention, two male sales professionals would have been terminated for improperly using the "Extra Holidays" technique during secret shops [*Id.*, ¶ 16]. Hall alleges that Godfrey also said that sales professionals who used this technique prior to his announcement would be forgiven, but that any prospective use of the technique would be grounds for termination [*Id.*, ¶ 17]. According to Hall, she stopped using the "Extra Holidays" technique after Godfrey's announcement [*Id.*, ¶ 17].

On or about July 8, 2009, Hall was terminated for what she alleges was her use of the "Big Show" and "Extra Holidays" techniques during her April 2009 secret shop [Doc. 1-1, ¶ 15]. Hall alleges that she was not given any notice prior to Godfrey's announcement that the techniques were no longer permitted [*Id.*, ¶ 14]. Hall alleges that male sales professionals received lesser punishments such as reprimands and suspensions, for similar use of the techniques during secret shops, and, in contrast to what he did for the men, Godfrey did not intervene on Hall's behalf for her use of the techniques [*Id.*, ¶ 19]. Hall also alleges that Brad Burson ("Burson"), her superior at the Smokey Mountain Office, offered to protect her from discipline if she would engage in sexual activity with him [*Id.*, ¶ 18]

**B.     Collins**

In 2003, Collins was employed as a timeshare salesperson at defendants' Smoky Mountain Office [Doc. 1-1, ¶ 20]. She was transferred to New Orleans, and returned to the Smokey Mountain Office in March 2009, at which time she became a sales manager [*Id.*].

3

Collins alleges that, as manager of a sales team, defendants continually assigned her poor sales representatives whose poor performance negatively affected her pay [*Id.*, ¶ 21]. Collins alleges that male managers were continually assigned better performing sales representatives, resulting in the men receiving higher compensation [*Id.*]. In the summer of 2009, Collins alleges that she was secretly shopped and that she was subsequently discharged via a "Notice of Corrective Action," despite having no prior corrective or disciplinary actions her employee record [*Id.*, ¶¶ 22, 23]. Collins alleges that "[j]ust as with [Hall]," she was "terminated for grounds that give rise to mere reprimands, warnings or suspensions to equivalent male sales representatives and managers[.]" [*Id.*, ¶ 23].

### C. Ott

Ott started as a sales force manager at defendants' Smokey Mountain Office and was promoted to floor sales manager around March 21, 2009 [Doc. 1-1, ¶ 24]. Ott alleges that she did not receive any training as a new manager, even though new male managers were offered and given such training [*Id.*]. Ott alleges that defendants assigned poorly performing female sales professionals to her sales team with the intention that female employees could then be terminated by a female manager in order to avoid sexual discrimination lawsuits [*Id.*, ¶ 25]. She alleges that defendants also required her to falsify time records [*Id.*, ¶ 27]. According to Ott, defendants' actions caused her to suffer financially [*Id.*, ¶ 26]. Around February 24, 2010, Ott alleges that she was demoted without warning for failing to properly manage her sales team and for complaining about being used as a "hatchet woman" for poorly performing female sales professionals [Doc. 1-1, ¶ 28]. Ott alleges that as a result of

defendants' actions, she suffered "significant mental injury" which made her unable to return to work [*Id.*, ¶ 29].

## II. Standard of Review

A party may move to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). In order to survive a Rule 12(b)(6) motion, a complaint must contain allegations supporting all material elements of the claims. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). To satisfy this standard, a plaintiff need only offer "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In determining whether to grant a motion to dismiss, all well-pleaded allegations must be taken as true and must be construed most favorably toward the non-movant. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. A formulaic recitation of the elements of a cause of action will not do, neither will "'naked assertion[s]' devoid of 'further factual enhancement[,]'" nor an unadorned, the-defendant-unlawfully harmed-me accusation. *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

5

**III.    Analysis**

Defendants have moved to dismiss plaintiffs' intentional infliction of emotional distress claims for failure to state claims upon which relief may be granted. Defendants argue that these claims should be dismissed because the conduct alleged, even if true, does not rise to the level of outrageous conduct. Defendants also assert that plaintiffs have not alleged sufficient serious mental injury resulting from defendants' alleged misconduct. Plaintiffs contend that the acts alleged in the complaint constitute unfair and outrageous conduct that is not of the type tolerated by civilized society, especially given the high standards set by defendants for their community of employees.

**A.    Intentional Infliction of Emotional Distress**

The tort of intentional infliction of emotional distress is also known as the tort of outrageous conduct. *Doe 1 ex rel. Doe v. Roman Catholic Diocese*, 154 S.W.3d 22, 31 (Tenn. 2005). To succeed on a claim for intentional infliction of emotional distress, a plaintiff must prove that the complained-of conduct (1) is "intentional or reckless"; is (2) "so outrageous that it is not tolerated by civilized society"; and (3) results in "serious mental injury." *Doe 1*, 154 S.W.3d at 31 (quoting *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Liability exists "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Bain*, 936 S.W.2d at 623. A successful case will be "one in which the recitation of the facts to an average member of the community

would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'." *Id.* (quoting *Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (Tenn. 1966)).

### B.     Outrageous Conduct

The Tennessee Supreme Court has recognized that "[t]he outrageous conduct requirement is a high standard which has consistently been regarded as a significant limitation on recovery." *Doe 1*, 154 S.W.3d at 39. The "outrageousness requirement is an 'exacting standard' which provides the primary 'safeguard' against fraudulent and trivial claims." *Id.* (citing *Miller v. Wilbanks*, 8 S.W.3d 607, 614 (Tenn. 1999)); *see also Reagan v. City of Knoxville*, 692 F. Supp. 2d 891, 907 (E.D. Tenn. 2010) (applying a "high standard" to an intentional infliction of emotional distress claim). Under this standard, "[i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Bain*, 936 S.W.2d at 623 (citations omitted). "[M]ere insults, indignities, threats, annoyances, petty oppression or other trivialities" fail to constitute outrageous conduct. *Levy v. Franks*, 159 S.W.3d 66, 83 (Tenn. Ct. App. 2004).

Both Hall and Collins allege that defendants' terminated them for conduct male sales professionals engaged in and for which the men only received reprimands or other lesser disciplinary actions. Hall also alleges that she was offered protection from discipline by a superior in exchange for sex. Ott alleges that she was not given the same training as male sales managers, that she suffered financially as a result of being assigned poorly performing

female sales representatives, and that she was forced to falsify employee time records. Ott also alleges that she was demoted for failing to properly manage her sales team, despite defendants' failure to train her, and for complaining about being a "hatchet woman."

Of the three plaintiffs, Hall's allegation of being told she would be protected in exchange for sex comes the closest to an allegation of outrageous conduct. It does not, however, rise to the level of conduct that would be considered outrageous by Tennessee courts. In *Briordy v. Chloe Foods Corp.*, the plaintiff brought suit against her former employer for sexual harassment and retaliation under the THRA and for intentional infliction of emotional distress. No. 3:07-0295, 2008 WL 587503, at *1 (M.D. Tenn. Feb. 29, 2008). The plaintiff alleged that her supervisor made sexually inappropriate statements and unwanted sexual advances towards her, *id.* at *4-6, and, on one occasion, grabbed her waist and forcibly kissed her. *Id.* at *6-7. The *Briordy* court concluded, however, that the plaintiff's allegations "do not . . . constitute such extreme, outrageous conduct which would be beyond the pale of decency[,]" *id.* at *10, and "unfortunately, [are] not atypical of the fact pattern presented in most harassment cases." *Id.* The *Briordy* court went on to observe that "'discriminatory conduct does not automatically give rise to the imposition of liability for the intentional infliction of emotional distress.'" *Id.* (quoting *Arnett v. Domino's Pizza I. LLC*, 124 S.W.3d 529, 540 (Tenn. Ct. App. 2003)).

Other Tennessee cases indicate that more extreme conduct than that alleged by Hall is required for this tort. *See, e.g., Pollard v. E.I. DuPont de Nemours Co.*, 213 F.3d 933 (6th Cir. 2000), *rev'd on other grounds*, 532 U.S. 843, 947 (2001) (finding that sabotaging the

8

plaintiff's personal safety and subjecting her to pranks that forced her to resign from her shift amounted to "slow torture" and constituted a pattern of "daily, consistent harassing behavior" that was sufficiently outrageous); *Dunn v. Moto Photo, Inc.*, 828 S.W.2d 747, 753-54 (Tenn. Ct. App. 1991) (holding that a photo store employee's conduct of telling a female customer that her film could not be developed, when in fact the employee kept the nude photographs and showed them to acquaintances, was sufficiently outrageous); *Johnson v. Woman's Hospital*, 527 S.W.2d 133 (Tenn. Ct. App. 1975) (holding that showing a mother her deceased baby preserved in a formaldehyde jar was sufficiently outrageous). Accordingly, the Court concludes that Hall's single allegation of Burson's offer of protection from discipline in exchange for sex, while certainly not acceptable conduct, does not rise to the level of consistent, harassing, or intolerable conduct required by this tort.

Similarly, the allegations by Hall, Collins, and Ott of gender-based discriminatory behavior does not rise to the "high threshold" of conduct that is so extreme in degree as to be beyond the pale of decency and utterly intolerable in a civilized society. *See Bain*, 936 S.W.2d at 623. In *Bellomy v. Autozone, Inc.*, a case considering allegations that an employer promoted a less qualified male employee over the plaintiff, a female, the court observed that discrimination claims rising to the level of outrageous conduct must meet a high threshold. No. E2009-00351-COA-R3-CV, 2009 WL 4059158, at *2-4, 11 (Tenn. Ct. App. Nov. 24, 2009). The *Bellomy* court found the plaintiff's allegations did not meet this high threshold and observed that "[t]o hold otherwise would result in every discrimination claim also being an outrageous conduct claim." *Id.* at *11. *See also Sawyer v. Memphis Educ. Ass'n*, No.

9

W2006-00437-COA-R3-CV, 2006 WL 3298326 (Tenn. Ct. App. Nov. 14, 2006) (finding the plaintiff's allegations were insufficient to state a claim for outrageous conduct when the plaintiff had alleged race and gender discrimination because he was treated differently than his co-workers). In addition, the allegations of gender discrimination by Collins and Ott do not rise to the level of more than general allegations of discrimination and unfair treatment based on sex.

While plaintiffs argue that defendants have assumed a higher standard for their community and that this departure from their professional standard renders defendants' conduct outrageous, the Court disagrees. Even assuming defendants have taken on a higher standard of conduct than other professionals or other businesses [*see* Doc. 6-1], the Court does not find this standard to be so unique from the normal standards of conduct under which businesses operate to make the conduct in this case outrageous. Accordingly, the Court find plaintiffs' allegations of discriminatory conduct and treatment do not rise to the level of outrageous conduct.

### C. Serious Mental Injury

In addition to outrageous conduct, "a plaintiff must show more than the 'transient and trivial emotional distress [that] is a part of the price of living among people.'" *Levy*, 159 S.W.3d at 85 (citations omitted). Serious mental injury is that in which "'the distress is so severe that no reasonable [person] could be expected to endure it.'" *Id.* (citations omitted).

Even if the Court had determined that Hall and Collins had alleged outrageous conduct, their claims for intentional infliction of emotional distress would still fail because

they have not alleged any serious mental injury, either in the complaint or in their response to defendants' motion. As to Ott, she alone has alleged that she suffered "significant mental injury" that rendered her unable to return to work [Doc. 1-1, ¶ 29]. Ott, however, has alleged no other facts relating to her alleged mental injury. Accordingly, given how Tennessee courts have described a "serious mental injury," Ott's failure to allege outrageous conduct, and the general nature of Ott's allegations of discrimination, the Court concludes that Ott has also failed to state a claim for intentional infliction of emotional distress.

**IV.** **Conclusion**

For the reasons set forth herein, defendants' Rule 12(b)(6) motion to dismiss plaintiffs' claims for intentional infliction of emotional distress [Doc. 4] is **GRANTED** and plaintiffs' intentional infliction of emotional distress claims are hereby **DISMISSED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE